SHAUN KHOJAYAN (#197690)
LAW OFFICES OF SHAUN KHOJAYAN
 & ASSOCIATES, P.L.C.
515 S. Flower Street, 19th Floor
Los Angeles, CA 90071
Tel.: (310) 274-6111
Fax: (310) 274-6211
Email: shaun@khojayan.com

Dmitry Lapin, Esq. (pending admission
*pro hac vice*)
dmitry@axenfeldlaw.com
Axenfeld Law Group, LLC
2001 Market Street Suite 2500
Philadelphia, PA 19103
917-979-4570

*Attorneys for Plaintiffs Jon Q. Wright, and JQ Licensing, LLC*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Jon Q. Wright & JQ Licensing LLC<br><br>Plaintiff,<br><br>vs.<br><br>Bart Hall & Associates, LLC and Bart Hall, individually.<br><br>Defendant. | Case No.:   24-cv-4931<br><br>**COMPLAINT FOR COPYRIGHT INFRINGEMENT**<br><br>**DEMAND OF JURY TRIAL** |

Plaintiffs Jon Q. Wright ("JQW") and JQ Licensing, LLC (collectively, the "Plaintiffs"), by and through their undersigned attorney, hereby prays to this

1
COMPLAINT

honorable Court for relief based on the following:

## INTRODUCTION

1. This action arises from the willful copyright infringement of Plaintiffs' copyrighted and valuable illustration. Plaintiffs seek to obtain injunctive relief against Defendants Bart Hall & Associates, LLC ("BHA") and Bart Hall ("Hall") (collectively, "Defendants") to stop their continuing infringement and prevent any further infringement to Plaintiffs' copyrights. Defendants' acts of infringement have damaged Plaintiffs' business and threatens to damage it further. Plaintiffs seek injunctive relief, declaratory relief, and damages for the full amount of Plaintiffs' losses, as well as Defendants' profits, or if elected, statutory damages, as well as attorneys' fees, and costs pursuant to 17 U.S.C. §§ 504(c) and 505.

## THE PARTIES

2. Plaintiff Jon Q. Wright is an individual domiciled and residing in the State of Montana and author of numerous fish illustrations, including the work of art that is the subject of this litigation (the "Subject Work"), shown *infra*.

3. Wright is the author and owner of the Subject Work.

4. Wright is a member of JQ Licensing LLC, a limited liability company duly formed under the laws of the State of Minnesota and registered in the State of Montana as a foreign limited liability company (hereafter, "JQ Licensing"). Wright licenses his artwork exclusively through JQ Licensing.

5. Defendant BHA is a limited liability company formed and existing under the laws of the state of California, with its principal place of business in Camarillo, California.

6. Hall is an individual residing in Camarillo, California and is the sole owner, operator, manager, officer, etc., of BHA.

## JURISDICTION AND VENUE

7. This is an action for copyright infringement arising under the Copyright Act of 1976 (17 U.S.C. §§ 101 et seq. as amended).

8. This Court has subject matter jurisdiction over Plaintiffs' copyright infringement claims under the Copyright Act of 1976 (17 U.S.C. §§ 101 et seq. as amended) and 28 U.S.C. §§ 1331 and 1338.

9. Venue is proper in this district under 28 U.S.C. §§ 1391 and 1440 in that this is the judicial district in which a substantial part of the acts and omissions giving rise to the claims occurred and the judicial district wherein the Defendants can be found.

## PLAINTIFFS' WORK OF ART

10. In 2000, JQW authored several fish illustrations, including the Subject Work, which consists of a highly detailed and artistic representation of a bass fish, and is depicted on the subsequent page:

//
//



11. JQW duly registered the Subject Work with the U.S. Copyright Office under Registration No. VA 1-153-915, as a collection of illustrations of different species of fish, all authored by JQW. This registration, entitled "Legends Series Artwork," has an effective date of June 1, 2001. A copy of the Legends Series Artwork registration certificate is annexed hereto as **Exhibit A.**

12. JQW's practice of creating highly detailed and unique wildlife illustrations is an extraordinarily time-consuming process, involving a dizzying multiplicity of steps.

13. In order to create his detailed fish illustrations, including the Subject Work, JQW first faces the laborious task of catching a trophy-sized specimen of the subject fish.

14. Once a trophy fish is caught, JQW takes detailed photographs of the fish, freezes, and then partially thaws the fish in order to mold the body into the desired position. He then impales the fish with numerous stakes to preserve the particular and desired pose, then captures a 360º perspective of the manipulated fish through a series of photographs.

15. Only then does JQW begin the sketching process, referring to the photographs as reference material.

16. JQW then takes numerous artistic liberties with certain aspects of the fish and expresses elements of the fish in a manner that is creative and unique to his style and artistic abilities.

17. With the Subject Work, JQW has taken creative license with certain body parts, including but not limited to, body and tail length to depict the fish "in action," swimming in freshwater, jumping from the water, or to otherwise give the viewer the impression that the fish is "trophy sized" by creatively manipulating the size, shape, and direction of anatomical features in ways which are not possible to fish in nature.

18. JQW's artwork has been painstakingly created, with each minute original detail being depicted with precision.

19. JQW estimates that he has spent hundreds of hours painting a single one of his fish illustrations, touching each individual painted fish scale with a paintbrush between three and five times.

20. JQW artwork is very valuable, as there are not many artists painting freshwater fish, and even fewer creating works with the type of detail employed by JQW.

21. Because of JQW's unique talents, painstaking attention to detail, and unique expression of fish of all species, his artwork is highly pursued.

22. JQW's success as a wildlife illustrator, and by implication the value of his artwork, is dependent on experience, patience, and dedication, and each of his paintings is built on his talent and 40 years of expertise.

## DEFENDANTS' INFRINGING CONDUCT

23. Plaintiffs repeat, reallege, and incorporate the allegations contained in the preceding paragraphs of this Complaint as if fully set forth herein.

24. BHA hosts, operates, produces, or otherwise conducts fishing related exhibitions, exposition, and/or other related events titled "Bart Hall Shows," or "Fred Hall Shows" (the "Events"), wherein vendors lease event space so that they may advertise, promote, and market their respective businesses, and where consumers pay entry fees to access the event, purchase products/services from the vendors, and take part in seminars, among other things.

25. BHA operates numerous events throughout Southern California, all under the name "Bart Hall Shows" or "Fred Hall Shows."

26. In order to promote, advertise, or otherwise market BHA's business, namely the Events, Defendants, and each of them, designed, created, copied, reproduced, distributed, displayed, and/or otherwise exploited the Subject Work, and incorporated the same onto a vast array of digital and print flyers, event programs, social media posts, physical tickets to their events, as well as their website(s) and ticket purchasing pages (collectively, the "Infringing Material").

27. As demonstrated below within an exemplar from the Infringing Material, Defendants unlawfully exploited the Subject Work for their commercial benefit:



28. The exemplar demonstrates that an exact copy of the Subject Work was copied and incorporated as part of the Infringing Material.

29. Defendants, and each of them, published, distributed, reproduced, or otherwise displayed photographs and videos containing the Infringing Material onto the internet, and also in person, to vendors, event attendees, sponsors, and other interested parties.

30. The allegations herein are made as to all material, products, items, photographs, advertisements, etc., that Defendants used, created, copied, marketed, displayed, distributed, or sold that incorporate and/or copy the Subject Work, or any part thereof.

31. Hall is the sole member, director, officer, and/or shareholder of BHA and maintains exclusive control, management, and operation of BHA.

32. Hall personally participated in the infringing acts described herein by, at the very least, one or more of the following infringing acts: (a) displaying or otherwise publishing the Infringing Material onto the internet, including BHA's social media pages, (b) displaying and distributing the Infringing Material to vendors, event attendees, sponsors, and other interested parties; and/or (c) instructing, directing, or otherwise causing the creation of the Infringing Material.

33. Defendants' infringing acts, as alleged herein, were undertaken to reap the creative and artistic benefit and value of the Subject Work.

34. By failing to obtain Plaintiffs' authorization to use the Subject Work, or to compensate Plaintiffs for the use, Defendants avoided payment of license fees and other financial costs associated with obtaining permission to exploit the Subject Work, as well as the restrictions that Plaintiffs are entitled to, and would place, on any such exploitation as conditions for Plaintiffs' permission, including the right to deny permission altogether.

35. Defendants willfully misappropriated the Subject Work, and with blatant and reckless disregard for Plaintiffs' rights in and to the Subject Work, by failing to ensure its use of the same was proper, despite the fact that Defendants knew, or should have known, of its infringing nature.

36. As a result of Defendants' infringement of Plaintiffs' copyrights in and to the Subject Work, Plaintiffs have suffered significant damage, including but not limited, lost royalties and licensing revenue and have suffered dilution and diminishment of the value of Subject Work.

37. On several occasions, and prior to initiating this lawsuit, Plaintiffs attempted to communicate with Defendants, however Defendants did not respond to Plaintiffs communications, thereby forcing Plaintiffs to file this suit.

//

//

//

# COUNT I
## (COPYRIGHT INFRINGEMENT – 17 U.S.C. §101, *et seq.* - Against All Defendants and Each)

38. Plaintiffs repeat, reallege, and incorporate the allegations contained in the preceding paragraphs of this Complaint as if fully set forth herein.

39. JQW is the sole owner of Subject Work and holds valid copyright registrations in accordance with the United State Copyright Act.

40. The Subject Work is copyrightable subject matter under 17 U.S.C. §102(a).

41. JQW has complied in all respects with the provisions and requirements of the Copyright Act.

42. Prior to the acts complained of herein, JQW duly registered the copyrights in and to the Subject Work with the United States Copyright Office.

43. JQW has exclusive rights under 17 U.S.C. §106 to reproduce, prepare derivative works of, distribute copies of, and publicly display the Subject Work.

44. Upon information and belief, Defendants, and each of them, had access to the Subject Work through (a) viewing Plaintiffs' online portfolio; (b) viewing and/or purchasing licensed exploitations of the Subject Work; and/or (c) viewing and/or downloading illegally reproduced, imported, and/or distributed copies of the Subject Work by third parties.

45. Access is also established by the striking similarity and/or identicality between the Subject Work and the artwork exploited by Defendants within the Infringing Material, precluding any possibility of independent creation.

46. As detailed *supra*., the Infringing Material contains an illustration of a bass fish that is identical or virtually identical to the Subject Work.

47. The Infringing Material exploits the Subject Work by copying all, or virtually all protectable elements of expression unique to JQW's artistic style, as well as his creative and particular expressions of a bass fish.

48. The Subject Work is the by-product of JQW's creative and original selection, coordination, and arrangement of elements.

49. Defendants, and each of them, have infringed Plaintiffs' rights by copying the Subject Work and subsequently creating, making and/or developing directly infringing works and/or derivative works featuring the Subject Work.

50. Defendants, and each of them, have infringed Plaintiffs' rights by copying the creative and original selection, coordination, and arrangement of elements.

51. Defendants, and each of them, were directly involved in the reproduction, distribution, display, adaptation, and/or creation of a derivative work, using the Subject Work.

52. Due to Defendants' acts of copyright infringement as alleged herein, Plaintiffs have suffered damages in an amount to be established at trial, including without limitation lost profits, royalties, and a diminution in the value of the misappropriated works.

53. As a result of the acts of infringement complained of herein, Defendants received revenues it would not have otherwise received, added brand value, and indirect sales and profits it would not have otherwise received.

54. Due to Defendants' acts of copyright infringement as alleged herein, Defendants have obtained direct and indirect profits they would not otherwise have realized but for their infringement of the Subject Work. As such, Plaintiffs are entitled to disgorgement of Defendants' profits directly and indirectly attributable to Defendants' infringement of Plaintiffs' rights in and to the Subject Work, in an amount to be established at trial.

55. Defendants, and each of them, have committed copyright infringement with actual or constructive knowledge of Plaintiffs' rights such that said acts of copyright infringement were willful, reckless, malicious, and in blatant disregard of Plaintiffs' rights. Such willfulness provides the basis on which Plaintiff seeks additional forms of relief.

56. In the alternative, Plaintiffs claim statutory damages under 17 U.S.C. §504(c)(1) for Defendants' negligent unauthorized use and copyright infringement.

57. Plaintiffs claim all damages and remedies available under 17 U.S.C. §§504 and 505.

## COUNT II
**(SECONDARY COPYRIGHT INFRINGEMENT – Vicarious Infringement)**

58. Plaintiffs repeat, reallege, and incorporate the allegations contained in the preceding paragraphs of this Complaint as if fully set forth herein.

59. To the extent that any or all of the Infringing Material were created by a presently unknown third party, Defendants, and each of them, are vicariously liable for the direct infringement alleged herein because Defendants had the right and ability to supervise the infringing conduct and because they had a direct financial interest in the infringing conduct.

60. Defendants, and each of them, have full control over, and final decision-making authority, over the content of any marketing, advertising, or promotional material used in connection with the Events, including the Infringing Material.

61. Defendants, and each of them, maintain a right and practical ability to stop or limit the direct infringement of the presently unknown third parties, yet declined to do so, namely that Defendants; (a) had the ability to review, approve, decline, or otherwise supervise the creation of marketing, advertising, and promotional material created for Defendants, including but not limited to the Infringing Material; and/or (b) controlled their respective websites and social

COMPLAINT

media pages and had the practical ability to publish and remove content, including the Infringing Material and photographs and videos of the same.

62. By commercially exploiting the Infringing Material, Defendants failed to exercise their right and ability to stop or limit infringing behavior.

63. Defendants, and each of them, failed to perform any due diligence concerning the Subject Work, whether the artwork was available for commercial exploitation, and whether a license is required.

64. Defendants had an obvious and direct financial interest in the unlicensed copying, reproduction, distribution, display, and exploitation of the Infringing Material as each item of Infringing Material was used to promote, market, and advertise Defendants and their businesses, draw relevant individuals Defendants' websites and to the Events, generate revenue from the sale of their services.

65. The Subject Work, and consequently the Infringing Material as a whole, serves as a "draw" for Defendants' business and attracts the attention of event attendees, vendors, sponsors, and other interested parties.

66. Hall, as the sole owner of BHA, had a direct and obvious financial interest in the unlicensed copying, reproduction, distribution, and display of Infringing Material because all revenues flow directly to Hall.

67. Due to Defendants' acts of copyright infringement as alleged herein, Defendants have obtained direct and indirect profits they would not otherwise have realized but for their infringement of the Subject Work. As such, Plaintiffs are entitled to disgorgement of Defendants' profits directly and indirectly attributable to Defendants' infringement of Plaintiffs' rights in the Subject Work, in an amount to be established at trial.

68. Upon information and belief, Defendants' has committed acts of copyright infringement, as alleged above, which were willful, intentional and malicious, which further subjects Defendants to liability for statutory damages under Section 504(c)(2) of the Copyright Act in the sum of up to one hundred fifty thousand dollars ($150,000.00) per infringement. Within the time permitted by law, Plaintiffs will make their election between actual damages and statutory damages.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs requests judgment against Defendants, and each of them, as follows:

A. that the Court enter judgment against Defendants setting forth that Defendants have willfully infringed Plaintiffs' federally registered copyrights to the Subject Work as contemplated by 17 U.S.C. §504(c)(2);

B.  alternatively, that the Court enter judgment against Defendants setting forth that Defendants have infringed Plaintiffs' federally registered copyright to the Subject Work, pursuant to 17 U.S.C. § 501;

C.  that Defendants and their respective agents, officers and servants be enjoined from importing, manufacturing, distributing, displaying, offering for sale, selling or otherwise trafficking in any materials that infringe Plaintiffs' copyrights in and to the Subject Work;

D.  impounding all unauthorized material that bears infringing copies of Plaintiffs' copyrighted artwork in the possession or control of Defendants pursuant to 17 U.S.C. §503(a)(1)(A), and ordering destruction of all unauthorized material bearing Legends Bass, pursuant to 17 U.S.C. §503(b);

E.  that Plaintiffs be awarded all profits of Defendants plus all losses of Plaintiffs, the exact sum to be proven at the time of trial, or, if elected before final judgment, statutory damages for willful infringement as available under 17 U.S.C. § 504(c);

F.  that Plaintiffs be awarded their attorneys' fees as available under 17 U.S.C. § 504(c) or other applicable statute;

G.  that Plaintiffs be awarded pre- and post-judgment interest as allowed by law;

    H.    that Plaintiffs be awarded the costs of this action; and

    I.    that Plaintiffs be awarded such further legal and equitable relief as the Court deems proper.

PLAINTIFFS DEMAND A JURY TRIAL ON ALL ISSUES SO TRIABLE PURSUANT TO FED. R. CIV. P. 38 AND THE 7TH AMENDMENT TO THE UNITED STATES CONSTITUTION.

Respectfully submitted,

Date: June 11, 2024

s/ Shaun Khojayan

Shaun Khojayan (#197690)
515 S. Flower Street, 19th Floor
Los Angeles, CA 90071
Tel.: (310) 274-6111
Fax: (310) 274-6211
Email: shaun@khojayan.com

Dmitry Lapin, Esq. (pending admission *pro hac vice*)
dmitry@axenfeldlaw.com
Axenfeld Law Group, LLC
2001 Market Street Suite 2500
Philadelphia, PA 19103
917-979-4570

*Attorneys for Plaintiffs Jon Q. Wright, and JQ Licensing, LLC*